Filed 12/5/22 P. v. Gonzalez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>RICKY ART GONZALEZ,<br><br>     Defendant and Appellant. | C094199<br><br>(Super. Ct. No. 17FE001859) |

Defendant Ricky Art Gonzalez and his codefendant Corey Robertson met three underage girls, D., G., and T., at the mall and brought them to Robertson's apartment to drink alcohol. After the girls became too intoxicated to resist, each was raped by either defendant or Robertson, or both. T. was unconscious when defendant and Robertson raped her.

1

Defendant was convicted of three counts of rape of an intoxicated person (two counts involving D. and one involving T.), one count of oral copulation of an intoxicated person (involving D.), and one count of rape of an unconscious person (involving T.).[1] The trial court sentenced him to serve an aggregate determinate term of 20 years in state prison.

On appeal, defendant contends: (1) the evidence is insufficient to support his convictions for raping an intoxicated and unconscious T.; (2) the trial court prejudicially abused its discretion and violated defendant's federal constitutional rights by admitting evidence of uncharged sex offenses under Evidence Code[2] sections 1108 and 1101, subdivision (b); and (3) the trial court prejudicially erred and further violated defendant's constitutional rights by denying his request to modify CALCRIM No. 375 to omit language informing the jury that it could consider the uncharged sex offense evidence in determining whether or not he had a plan to commit the charged offenses.

We affirm. As we explain, although no one witnessed defendant raping T., other than defendant and perhaps Robertson, neither of whom admitted the act occurred, the circumstantial evidence is sufficient to support the jury's conclusion that defendant raped her while she was unable to resist due to intoxication and unconsciousness. The trial court neither abused its discretion nor violated defendant's constitutional rights by

---

[1]     With respect to D., defendant was also charged with two counts of rape of an unconscious person and one count of oral copulation of an unconscious person, but was acquitted of those charges. Defendant was further charged with four counts involving G., but was also acquitted of those charges. Robertson's jury convicted him of three counts of rape of an intoxicated person (one count each for D., G., and T.), two counts of rape of an unconscious person (involving T. and another victim, A., committed on a separate occasion), and one count of oral copulation of an intoxicated person (involving G.). As this appeal involves only defendant, we discuss Robertson's participation in these events only to the extent that it provides context for defendant's conduct.

[2]     Undesignated statutory references are to the Evidence Code.

2

admitting uncharged sex offense evidence under sections 1108 and 1101, subdivision (b). Finally, having properly admitted the evidence for purposes of proving a plan to commit the charged offenses, the trial court did not err in informing the jury that it could consider the evidence for that purpose.

## FACTS

In July 2016, D. and T. came over to G.'s house to go to the Roseville Galleria. G. was 17 years old at the time. T., a year younger, was her best friend. G. did not yet know D., who was also 17 years old. D. and T. had become friends while in juvenile hall together.

The girls took the bus to the mall and stayed there for about three hours before meeting up with defendant and Robertson, who were 24 and 26 years old, respectively. D. knew defendant through social media and had met him once in person. They exchanged messages through Instagram while the girls were at the mall. When D. told defendant that they "wanted to party," defendant and Robertson came to the mall to meet up with them.

At the mall, defendant asked the girls whether they wanted to go somewhere to get drinks. D. interpreted this to mean a bar and said she could not because she was only 17 years old. They then decided to do some drinking at Robertson's apartment.

Robertson lived in the North Highlands area of Sacramento County. As they left Roseville in Robertson's car and headed in the direction of Sacramento, T. became nervous because she was on probation and had an ankle monitor that would alert authorities if she left Placer County. Robertson told her she should cut it off and throw it out the window. T. declined to do so.

At the apartment, Robertson pulled a bottle of vodka out of the freezer. They each took two shots of vodka, one after the other. Robertson then left to buy a bottle of rum. When he returned, everyone took a shot of rum. G. and T. were sitting at the kitchen

table while D. sat on the couch.  Defendant began flirting with D. while Robertson flirted with G. and T.  Additional shots were poured.  T. had at least one more.  G. had several.

At some point, D. stepped out onto the balcony.  As she explained, she was starting to feel the effects of the alcohol and "needed to get some fresh air."  Defendant followed her outside and became "very flirtatious," grabbing D. by the waist and pulling her close to him.  D. told him to stop and said that she had a boyfriend.  This did not deter defendant.  After a few minutes, they came back inside and D. returned to the couch.

Drinking continued in the kitchen, but D. did not partake.  Neither did T., despite defendant and Robertson trying to coax her into drinking more.  Additional shots that were poured for her were taken by G.  In all, G. estimated taking about 10 shots of alcohol at Robertson's apartment.  She blacked out before any sexual activity occurred.  So did T.

D. testified to the following events.  She began to feel sick from the alcohol and went into the bathroom to try to throw up.  Defendant followed her into the bathroom and asked:  "What are you doing?"  When D. yelled at him to get out, he pulled down his pants and put his penis against her face as she sat on the floor next to the toilet.  D. was shocked and briefly blacked out.  When she regained consciousness, she was no longer on the floor.  Her face was being pushed against the bathroom mirror by defendant, who was behind her, pulling her skirt up and her underwear down.  D. struggled and tried to push him away, but was unable to do so before defendant penetrated her vagina with his penis.  D. continued resisting and defendant eventually stopped, saying, "Come on. Come on."

Defendant and D. then exited the bathroom and defendant told her to go into Robertson's bedroom.  D. stumbled into the room with defendant behind her, helping her stay on her feet as they went through the door.  Inside the room, Robertson was having sex with G. on his bed.  Defendant threw D. onto the same bed and again penetrated her vagina with his penis as she closed her eyes.  D. blacked out a second time, and when she

4

again regained consciousness, defendant was no longer raping her, but Robertson was. After Robertson finished his assault, he and defendant tried to get D. and G. to orally copulate each other. D. described G. as "really drunk" and "sloppy, out of it, talking, really slurring her words."

The next thing D. remembered was being in a closet with G., defendant, and Robertson. Defendant and Robertson then left D. and G. alone in the closet. D. was scared and confused. She asked G. why they were in the closet, but G. did not answer. D. did not remember leaving the closet, but remembered walking past T. in the living room sometime later. T. was lying face down on the living room floor in vomit with her shorts halfway down her legs. D. went to her phone and sent a few text messages to try to secure a ride home, but was unable to do so.

D.'s next memory was being back in Robertson's car with G. and T., both of whom were sleeping. Each of the girls was clothed, but D. was not wearing shoes or underwear and was also without her purse and cell phone. Defendant "was really upset about something," "very fidgety and just worried." D. remembered him telling Robertson that he had a wife. Robertson was less upset and "more like, Let's get out of here."

Ultimately, Robertson pulled over at another apartment complex, where he and defendant helped the girls out of the car and left them on a patch of grass outside the complex gates. As mentioned, G. did not remember any of the sexual activity that occurred inside Robertson's apartment. She also did not remember leaving the apartment or getting into Robertson's car. Her next memory that night was getting out of the car with D. and T. at the other apartment complex. She was also without her shoes, purse, and cell phone.

As a motorist drove past their location on the grass, one of the girls approached the car and asked for help. She was slurring her words and could barely stand up. The

motorist called 911. The girls then stumbled into the complex and made their way to a bench, where D. and G. sat down together and T. again vomited on the ground.

Police and paramedics arrived a short time later. T. was transported to the hospital for acute alcohol intoxication. She did not remember any of this. Her next memory was waking up at the hospital. She was not wearing a bra or underwear when she woke up at the hospital. Her shoes, purse, and cell phone were nowhere to be found. Her ankle monitor had also been removed.

Defendant's challenge to the sufficiency of the evidence extends only to his convictions for raping T. while she was both intoxicated and unconscious. We therefore summarize the physical evidence only with respect to these crimes. The shorts T. wore to Robertson's apartment were collected as evidence and tested for DNA. They tested positive for the presence of sperm in multiple locations. A DNA analysis revealed there were two major contributors to the sperm sample found on the inside fly area of the shorts. After comparing DNA collected from defendant and Robertson, the criminalist who performed the analysis included them as possible contributors to that sperm mixture. The probability of a random individual being included as a possible contributor to this mixture was one in two billion in the African-American population, one in one billion in the Caucasian population, and one in 640 million for the Hispanic population. Defendant and Robertson were also included as possible major contributors to the samples taken from the outside fly and inside crotch areas of the shorts, with similar odds of that occurring at random.[3]

---

[3] Swabs were also taken from T.'s vaginal area during a forensic examination. The vaginal swabs tested negative for acid phosphatase, an enzyme found in semen. Vulva swabs tested positive for acid phosphatase, but negative for sperm. Cervical swabs also tested negative for sperm. However, this forensic examination was conducted five days after T. was released from the hospital.

We finally note that Robertson used Snapchat to take and post a video of T., G., and D. while they were at his apartment. The video shows T. lying unconscious on the living room floor without her shorts or underwear. While recording, Robertson moved one of her legs to expose her vaginal area. During this portion of the video, Robertson says, "You know what's going down right now, my nigga. I got that 'A-1' right there." Robertson then quickly moves over to the bedroom, where D. and G. appear to be engaging in oral copulation on Robertson's bed. Text appearing over the video read: "I got 3 hoes to myseclf turning the fuck up. Two hoes in the bed."[4]

Additional relevant evidence, including evidence of an uncharged rape committed by defendant against another intoxicated and unconscious female victim, B., will be recounted during the discussion portion of this opinion, to which we now turn.

## DISCUSSION

## I

### *Sufficiency of the Evidence*

Defendant contends the evidence is insufficient to support his convictions for raping T. while she was unable to resist due to intoxication and unconsciousness. We disagree.

"When reviewing a challenge to the sufficiency of the evidence, we ask ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

---

[4] Robertson testified in his own defense. He claimed all sexual acts with D. and G. were consensual and denied any sexual conduct occurred with T. He explained the presence of his and defendant's sperm on T.'s shorts by claiming that T. came into the bedroom after Robertson and defendant had sex with G. and D., at which point T. took off her shorts, got on the bed, and started kissing G. Defendant then asked for a towel to wipe himself off. Instead of getting a towel, defendant "grabbed the first thing he could find," which was T.'s shorts. Later, after Robertson also had sex with D., he too used T.'s shorts to wipe himself off.

reasonable doubt." ' [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for ' "substantial evidence— that is, evidence which is reasonable, credible, and of solid value" ' that would support a finding beyond a reasonable doubt. [Citation.]" (*People v. Banks* (2015) 61 Cal.4th 788, 804.)

"A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "The same standard governs in cases where the prosecution relies primarily on circumstantial evidence. [Citation.] We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation.] 'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]" (*Id*. at pp. 357-358.)

The crime of rape of an intoxicated person requires proof of (1) an act of sexual intercourse, (2) where the victim "is prevented from resisting by an intoxicating or anesthetic substance, or a controlled substance," and (3) "this condition was known, or reasonably should have been known" by the defendant. (Pen. Code, § 261, subd. (a)(3).) The similar, but separate, crime of rape of an unconscious person requires proof of (1) an act of sexual intercourse, (2) where the victim "is at the time unconscious of the nature of the act," and (3) "this is known" by the defendant. (*Id*., subd. (a)(4).) For purposes of this latter crime, "unconscious of the nature of the act" is defined to include "unconscious or asleep." (*Id*., subd. (a)(4)(A).)

8

Here, defendant moved for a judgment of acquittal, arguing there was no evidence that he touched T. "in any type of sexual way, let alone penetrated her in order to cause or rise to the level of rape." In response to questioning from the trial court regarding the DNA evidence on T.'s shorts, defendant's attorney argued a reasonable jury could not infer penetration based on that evidence because defendant's semen could have been transferred to the shorts and Robertson's video could not be attributed to defendant. The trial court denied the motion.

Defendant renews this argument on appeal. Accordingly, we are concerned only with whether or not the evidence supports a finding that defendant had sexual intercourse with T. Defendant does not challenge the sufficiency of the evidence supporting the other elements; nor could he do so in good faith. T.'s level of intoxication and state of unconsciousness, as well as defendant's knowledge of these facts, are overwhelmingly supported by the evidence.

We conclude the evidence is also sufficient to support a reasonable inference that defendant had sexual intercourse with T. The DNA evidence is very strong. While Robertson's account of how that DNA got onto T.'s shorts is theoretically possible (see fn. 4, *ante*), the jury was not required to believe it. Moreover, that account was significantly undermined by the fact that D., who remembered much of what happened on Robertson's bed that night, did not remember T. being in the bedroom, let alone taking her shorts off and kissing G., after which both defendant and Robertson used T.'s shorts to wipe themselves off. Again, the jury was free to conclude this is not what happened. The more plausible explanation for how defendant's DNA, as well as that of Robertson, got onto T.'s shorts is that these defendants had sex with her while she was intoxicated and unconscious on the living room floor. This version of events is corroborated by Robertson's video, in which he films T. in that state and brags about his exploits. To be sure, Robertson does not implicate defendant in that video. Instead, he brags about

9

having the three girls to himself.  However, defendant's contribution to the sperm on T.'s shorts does the necessary implicating.

We conclude substantial evidence supports a reasonable conclusion that defendant had sexual intercourse with T. while she was both too intoxicated to resist and unconscious of the nature of the act.

## II

### *Admission of Uncharged Sex Offense Evidence*

Defendant also claims the trial court prejudicially abused its discretion and violated his federal constitutional rights by admitting evidence of uncharged sex offenses under sections 1108 and 1101, subdivision (b).  He is mistaken.

### A.

### *Additional Background*

The prosecution moved in limine to introduce testimony from a young woman, B., who previously accused defendant of committing the same sex offenses against her, i.e., rape of an intoxicated person and rape of an unconscious person.  B.'s testimony was offered for the purpose of proving defendant's propensity to commit such offenses (see § 1108) and for the separate purpose of proving he had a motive to commit the charged offenses against the victims in this case, operated pursuant to a similar plan or scheme, and did not commit the present crimes by mistake or accident (see § 1101, subd. (b)).

The following facts were set forth in the prosecution's motion in limine regarding this prior sexual offense: "January 2016, the Sacramento Police Department received a call regarding a sexual assault from [B.]  [B.] reported she worked at Pizza Rock and went out with co-workers.  Defendant . . . also worked for Pizza Rock.  [B.] reported the only interaction she had with [defendant] occurred earlier in the night when he was hitting on her.  After that, they did not interact throughout the night until [B.] was getting ready to go home.  [B.] said she had been drinking throughout the night and had gaps in her memory.  She remembered calling an Uber and [defendant] getting into the Uber with

10

her and grabbing her phone. The last memory [B.] had was [defendant] changing the address for the Uber to his address. [¶] [B.] woke up and she was lying on her back, nude, in [defendant's] bed. Defendant was on top of her having sexual intercourse with her. [B.] reported she was not completely conscious at that point and started to panic. She began saying 'No' over and over again. Defendant did not stop having sex with her. She continued to tell him to stop because she was on her period and she had a tampon in. [B.] again lost consciousness. She woke up the next morning still at [defendant's] house. [¶] During a pretext call [defendant] stated he did not remember anything because he 'was black out drunk.' "

With respect to admissibility under section 1108, as interpreted by our Supreme Court in *People v. Falsetta* (1999) 21 Cal.4th 903, the prosecution argued B.'s testimony should be admitted because: the uncharged crimes were very similar to the charged crimes; the uncharged crimes were less prejudicial than the charged crimes because B. was an adult who became intoxicated on her own, whereas the juvenile victims in this case were sober when they met defendant and became intoxicated only after defendant and Robertson drove them to the latter's apartment and plied them with alcohol; the charged and uncharged offenses were committed within five months of each other; and B.'s testimony concerning the sexual assault she endured would not be likely to confuse or distract the jury or consume an undue amount of time. With respect to admissibility under section 1101, subdivision (b), the prosecution argued the charged and uncharged offenses were similar enough to be relevant to prove he had a motive to commit the charged offenses, operated pursuant to a similar plan or scheme, and did not commit the charged offenses by mistake or accident.

In response, at the hearing on the motion, defendant's counsel argued B.'s testimony would be "overly prejudicial," consume an undue amount of time, and also be "pretty confusing to the jury." Counsel argued: "[Defendant] is in a situation where it's not a prior conviction. He's in a situation where he never has admitted, or there's been

11

any type of administrative finding, or any type of finding that he's actually done anything wrong in that case. He's never even had a chance to actually defend himself against that allegation. It was an investigation that, for lack of a better phrase, didn't go anywhere, and then it shows up now in his trial. [¶] There's nothing special about this type of incident in reality. I don't think, as far as it being a common plan, it's precise enough to even fall under that category or under the revertive thinking[5], because it's basically people meeting at a bar. They later have sexual intercourse, and one person says, I don't remember consenting. That is not something that's very unique, requires a large plan of any sort. It happens – I don't want to say every day, but maybe in this country it does. [¶] In other words, there's no real probative value for the jury to get out of this, other than to hear that [defendant] is a bad person from another witness here. And so in order for [defendant] to start to have a fair trial once that happened, that witness has to be subjected to every type of cross-examination and every type of ability to see if this even has any merit."

After suggesting that B.'s testimony "could take the whole week," and could potentially require additional discovery, counsel reiterated that section 1108 must be constrained by section 352. With respect to section 1101, subdivision (b), counsel repeated his position that "it's not specific enough for a common plan or scheme." He also argued: "There is no need for a motive in this case. It's not because something happened to [defendant] that motivated him to do this to [B.] That would be a motive-type thing. It's not identity. [Defendant] is not acting like it wasn't me with her that night. [¶] So it doesn't even fit under [section] 1101[, subdivision] (b) to provide anything probative to the jury."

---

**5**     This phrase, "revertive thinking," appears to be a typographical error in the transcript. Counsel later uses the phrase "motive-type thing," which makes more sense in the context of this argument, and has a similar sound signature and cadence.

The trial court admitted the evidence under section 1108 for propensity and possibly under section 1101, subdivision (b), "depending on what [B.] says, [for] evidence of scheme or plan."

Thereafter, B. testified consistently with the offer of proof. The jury was ultimately instructed that it was permitted, but not required, to consider this evidence for the limited purpose of determining (1) whether defendant "knew that the effect of an intoxicating substance prevented the woman from resisting when he allegedly acted in this case," (2) whether defendant's "alleged actions were not the result of mistake or accident," and (3) whether defendant "had a plan to commit the offenses alleged in this case."

We finally note that the jury was not specifically instructed that it could consider B.'s testimony to prove a propensity to commit the charged crimes. Instead, the jury was instructed with CALCRIM No. 375, informing the jury in relevant part that it could consider this evidence only in deciding whether defendant knew that the effects of an intoxicating substance prevented the victims from resisting in this case, whether defendant's actions were not the result of a mistake or accident, and whether defendant had a plan to commit these offenses. Nevertheless, the prosecutor was allowed to argue to the jury that B.'s testimony showed defendant's "propensity to commit these acts."

**B.**

*Analysis*

In general, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) Two exceptions to this general rule are applicable here, sections 1108 and 1101, subdivision (b).

13

We discuss each exception below, noting at the outset that we review the trial court's admission of such evidence for abuse of discretion. (*People v. Orloff* (2016) 2 Cal.App.5th 947, 957.)

## 1.

### *Section 1108*

Section 1108 provides in relevant part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).) This provision "permits ' " 'consideration of . . . other sexual offenses as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense.' " ' [Citation.] As this court has previously observed, ' "[i]n enacting . . . section 1108, the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible *without regard to the limitations of . . . section 1101*." [Citation.]' [Citations.]" (*People v. Holford* (2012) 203 Cal.App.4th 155, 182 (*Holford*).) However, the admission of evidence under section 1108 is expressly subject to the limitations of section 352. (§ 1108, subd. (a).) Indeed, this provision "passes constitutional muster if and only if section 352 preserves the accused's right to be tried *for the current offense*. 'A concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is.' [Citations.]" (*People v. Harris* (1998) 60 Cal.App.4th 727, 737.)

Defendant does not dispute that section 1108 applies. He does argue the trial court abused its discretion in admitting the prior sex offenses under section 352. That section provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the

14

issues, or of misleading the jury." (§ 352.) We begin by observing "that ' "[t]he prejudice which exclusion of evidence under . . . section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in . . . section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*.' " [Citations.]' [Citation.]" (*Holford*, *supra*, 203 Cal.App.4th at p. 167.) Moreover, "[e]vidence is not inadmissible under [this provision] unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights." (*Ibid.*)

Here, the probative value of the challenged evidence is undeniable. Defendant's protestation to the contrary notwithstanding, the crimes committed against B. are very similar to the crimes committed in this case. In both cases, defendant took advantage of an extreme level of intoxication in order to satisfy himself sexually. In the present case, defendant and Robertson brought the victims to Robertson's apartment, where they could control their surroundings. In the case involving B., defendant followed her to her Uber, took her phone, and changed the destination address to his own apartment, where he could do the same. Defendant attempts to paint the crimes as "very dissimilar," and misleadingly claims the prosecutor "conceded as such," by pointing out that the victims in this case were minors while B. was an adult. The victims in this case were 16 and 17 years old. B. was 23 years old, still a very young woman. While the fact that B. was an adult certainly makes the crimes committed against the minor victims in this case worse, the age disparity alone does not make the crimes dissimilar.

Defendant also takes issue with the prosecution's offer of proof, comparing it to B.'s trial testimony, and notes that he "had *nothing* to do with buying her drinks." We accept this difference. Again, this makes defendant's crimes in the present case worse,

15

but it does not mean the crimes committed against B. are so dissimilar that they are either irrelevant, as defendant argues, or only minimally probative of defendant's propensity to commit the present crimes. In our view, on the whole, the crimes are very similar, and therefore B.'s testimony was highly probative. (*People v. Branch* (2001) 91 Cal.App.4th 274, 285 (*Branch*) ["if the prior offenses are very similar in nature to the charged offenses, the prior offenses have greater probative value in proving propensity to commit the charged offenses"].) Nor is this high level of probative value undercut by remoteness, as the uncharged and charged offenses were separated by merely a few months.[6]

Weighed against the probative value is the inevitable prejudice flowing from the admission of prior crimes evidence. We cannot conclude the nature of the uncharged crimes was "more inflammatory than the charged offenses" (*Branch*, *supra*, 91 Cal.App.4th at p. 283), and therefore likely to evoke an emotional bias against defendant. As we have already explained, the differences noted above made the crimes committed against B. less egregious than the present offenses. Finally, we cannot conclude the evidence would have misled the jury or caused it to be confused as to the issues before it. Nor did B.'s testimony take an undue amount of time. The trial court did not abuse its discretion under section 352.

Having concluded the evidence was admissible under section 352, "we must also reject defendant's argument that he was deprived of his constitutional right to a fair trial." (*Holford*, *supra*, 203 Cal.App.4th at p. 180.)

---

[6]  "In theory, a substantial gap between the prior offenses and the charged offenses means that it is less likely that the defendant had the propensity to commit the charged offenses. However, . . . significant similarities between the prior and the charged offenses may 'balance[ ] out the remoteness.' [Citation.]" (*Branch*, *supra*, 91 Cal.App.4th at p. 285.)

16

**2.**

### *Section 1101, Subdivision (b)*

The trial court also did not abuse its discretion by admitting B.'s testimony to prove a common plan under section 1101, subdivision (b).

This subdivision provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as . . . plan, knowledge, identity, absence of mistake or accident, . . .) other than his or her disposition to commit such an act." (§ 1101, subd. (b).)

"The relevance of uncharged misconduct to show identity, intent, or the existence of a common design or plan is determined by the nature and degree of the similarity between such misconduct and the charged crime. 'Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent.' [Citation.] 'The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent.' [Citation.] 'A greater degree of similarity is required in order to prove the existence of a common design or plan.' [Citation.] 'The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity.' [Citation.]" (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1018 (*Scheer*).)

As mentioned previously, the jury was specifically instructed to consider B.'s testimony only "for the limited purpose of knowledge, accident or a common plan." Defendant challenges its admission only on the issue of common plan, arguing "[t]he similarity in results that defendant had sex with an intoxicated or unconscious female did not establish a concurrence of common features that the various acts were naturally to be explained as caused by a general plan of which they are the individual manifestations." We disagree.

17

"[A] common design or plan, like motive, is simply an intermediate fact. Unlike motive, however, a common plan or scheme depends on the existence of striking similarities between the prior misconduct and the charged crime, and a nexus between the commission of the two is unnecessary. In other words, a common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant committed similar distinctive acts of misconduct against similar victims under similar circumstances." (*Scheer*, *supra*, 68 Cal.App.4th at p. 1020.) Contrary to defendant's suggestion, the fact that defendant had sex with intoxicated and unconscious females on separate occasions is not the only similarity between the charged and uncharged offenses. As we have explained, not only did defendant take advantage of an extreme level of intoxication in order to satisfy himself sexually, but he did so in a way that isolated the young victims in both cases, bringing the victims to Robertson's apartment in the present case, and taking B.'s phone to change the Uber driver's destination to defendant's apartment in the case involving B. We conclude defendant committed sufficiently similar misconduct against B., a victim who was similar to the victims in this case, even if a few years older, and under similar circumstances. The evidence was relevant to prove a common plan.

Having already discussed section 352 and due process in relation to the admissibility of B.'s testimony to prove propensity under section 1108, we decline to repeat ourselves here. There was no abuse of discretion or due process violation.

### III

### *Providing the Jury with Unmodified CALCRIM No. 375*

We also reject defendant's assertion that the trial court prejudicially erred and violated his constitutional rights by denying his request to modify CALCRIM No. 375 to remove the portion of the instruction informing the jury it could consider B.'s testimony for purposes of showing a common plan. Our conclusion that the evidence was properly admitted for that purpose requires rejection of this argument. Simply put, having

18

properly admitted the evidence for purposes of proving a plan to commit the charged offenses, the trial court did not err in informing the jury that it could consider the evidence for that purpose.

DISPOSITION

The judgment is affirmed.

/s/
HOCH, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
BOULWARE EURIE, J.